UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-20006-CR-MOORE/D'ANGELO

18 U.S.C. § 371
18 U.S.C. § 982

UNITED STATES OF AMERICA,

vs.

MANUEL DELGADO,

           Defendant.
_____/

FILED BY mp D.C.
Jan 8, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

### INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1. The Medicare Program ("Medicare") was a federal health care program that provided free or below-cost health care benefits to individuals who were sixty-five years of age or older, or disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).

3. Medicare was subdivided into four program "parts:" hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME") that was medically necessary and ordered by licensed physicians or other qualified health care providers. DME was equipment designed for repeated use and for a medical purpose, such as orthotic devices, wheelchairs, ventilators, speech generating devices, and collagen dressing.

4. DME suppliers and other health care providers seeking to participate in Medicare Part B and to bill Medicare for the cost of DME and related benefits, items, and services were required to apply for and receive a "provider number" (or "supplier number"). In these applications, CMS Form 855S, DME suppliers were required to provide truthful and accurate information and to certify that they agreed to comply with all Medicare-related laws and regulations.

5. National Provider Enrollment ("NPE") contractors processed Medicare enrollment applications for DME suppliers to make sure they met all supplier standards and enrollment requirements of CMS. Before DME suppliers could be enrolled in Medicare, they had to meet all CMS quality standards and obtain accreditation from a CMS-approved independent national accreditation organization.

6. At all relevant times, there were eight CMS-approved accreditation organizations in the United States, including the Board of Certification/Accreditation, International ("BOC"). The accreditation organizations were responsible for certifying DME suppliers as compliant with Medicare Part B quality standards. These quality standards imposed numerous requirements on

DME suppliers, ranging from requirements about the management and personnel of the company, to financial management and financial records requirements, to product service and product safety requirements.

7. CMS, through its NPE contractors, relied on the accreditation decision of the accreditation organization to verify a DME supplier's compliance with CMS quality standards as a condition for the DME supplier's initial enrollment, and for the maintenance of the DME supplier's billing privileges with Medicare.

8. The BOC contracted with surveyors to conduct unannounced, on-site surveys (hereinafter referred to as "audits") of applicant DME suppliers to verify and document the DME suppliers' compliance with the BOC accreditation standards, CMS quality standards, and any applicable state regulations. The BOC relied on the results of the audits in reaching its accreditation decisions for DME suppliers.

## The Defendant and Related Entities

9. Defendant **MANUEL DELGADO** was a resident of Miami-Dade County, Florida. Beginning no later than 2017 through the date of this Information, **DELGADO** was an independent contractor who worked as a "surveyor" for the BOC by conducting on-site audits of DME suppliers that sought accreditation from the BOC to be deemed compliant with Medicare Part B quality standards.

10. Under **MANUEL DELGADO's** contractor agreements with the BOC, **DELGADO** was subject to conflict-of-interest requirements in carrying out his duties as a surveyor. For instance, **DELGADO** was expressly prohibited from inspecting a DME supplier's facility if **DELGADO** or his immediate family was professionally or financially affiliated with

3

that facility. Also, **DELGADO**, together with his immediate family, were prohibited from receiving gifts and gratuities from any entity seeking to do business with the BOC.

11. Company 1 was a Florida corporation with a principal address in Homestead, Miami-Dade County, Florida that was purported to be a supplier of DME.

12. Individual 1 was a member of **MANUEL DELGADO's** immediate family and a resident of Miami-Dade, County, Florida. **MANUEL DELGADO** and Individual 1 were the beneficial owners of Company 1.

13. Company 2 was a Florida corporation with a principal address in Miami, Florida, that was purported to be a supplier of DME.

14. Individual 2 was a resident of Miami-Dade County, Florida and the beneficial owner of Company 2.

## Conspiracy to Defraud the United States
### (18 U.S.C. § 371)

15. Beginning in or around March 2019, the exact date being unknown to the United States Attorney, and continuing through in or around May 2024, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**MANUEL DELGADO,**

did knowingly and willfully combine, conspire, confederate, and agree with others, known and unknown to the United States Attorney, to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful functions of HHS and CMS in their administration and oversight of the Medicare program.

4

## Purpose of the Conspiracy

16. It was the purpose of the conspiracy for **MANUEL DELGADO** and his co-conspirators to unlawfully enrich themselves by, among other things: (a) performing audits of applicant DME suppliers in which **DELGADO** had a personal and financial interest; (b) submitting falsified audit reports to the BOC about the DME suppliers' compliance with the accreditation standards and CMS quality standards; (c) obtaining expedited approval and accreditation for the DME suppliers from the BOC that allowed them to enroll with Medicare; and (d) benefiting financially from the DME suppliers' enrollment and billing privileges with Medicare.

## Manner and Means of the Conspiracy

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

17. **MANUEL DELGADO** and his co-conspirators formed corporations for the purpose of establishing Medicare-approved suppliers that could bill Medicare and be sold to others as companies authorized to submit claims to Medicare.

18. **MANUEL DELGADO** and his co-conspirators concealed from the BOC that **DELGADO** and his immediate family members owned, managed, and had a financial interest in applicant DME suppliers that **DELGADO** audited on behalf of the BOC.

19. **MANUEL DELGADO** accepted cash bribes from co-conspirators who owned applicant DME suppliers in exchange for **DELGADO** providing them advance notice of the timing of their facility's on-site audits, submitting audit reports to the BOC that falsely reflected full

compliance with BOC accreditation standards and CMS quality standards, and expediting the site inspection and accreditation approval process.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1. On or about April 16, 2021, Individual 1 caused Company 1 to be registered as a Florida corporation with the State of Florida, Division of Corporations.

2. On or about June 14, 2021, Individual 1 caused an accreditation application to be submitted to the BOC requesting the accreditation of Company 1 as a DME supplier that was compliant with CMS quality standards.

3. On or about June 17, 2021, **MANUEL DELGADO** performed the on-site audit of Company 1 without disclosing to the BOC his family affiliation with, and his financial interest in, Company 1.

4. On or about June 17, 2021, **MANUEL DELGADO** completed the BOC's on-site audit report finding Company 1 fully compliant with every applicable standard of the audit check list.

5. On or about July 6, 2021, Individual 1 caused Company 1 to submit an application to be enrolled with Medicare as a supplier of DME to Medicare beneficiaries and to bill Medicare Part B for the DME.

6. On or about August 13, 2021, Individual 1 sold Company 1 as a Medicare-enrolled DME supplier to one or more buyers.

7. On or about February 17, 2023, Individual 2 caused Company 2 to be registered as a Florida corporation with the State of Florida, Division of Corporations, with a principal address located in Miami-Dade County, Florida.

8. On or about May 16, 2023, Individual 2 caused an accreditation application to be submitted to the BOC requesting the accreditation of Company 2 as a DME supplier that was compliant with CMS quality standards.

9. On or about May 17, 2023, **MANUEL DELGADO** sent a text message to a representative of Individual 2 confirming that he, **DELGADO**, would be at Company 2's facility the following day, on May 18, 2023 at approximately 1:30 p.m. to conduct an audit on behalf of the BOC.

10. On or about May 18, 2023, at approximately 1:30 p.m., **MANUEL DELGADO** arrived at Company 2's facility in Miami-Dade County, Florida, and conducted an on-site audit of the facility.

11. During **MANUEL DELGADO's** audit of Company 2, **DELGADO** accepted a $500 cash bribe from a representative of Individual 2 that was intended to ensure that **DELGADO** facilitated and expedited the accreditation process with the BOC.

12. On or about May 18, 2023, **MANUEL DELGADO** completed a site audit report and checklist that falsely reported compliance with BOC standards and requirements that Company 2 had not satisfied or that **DELGADO** had not verified.

13. **MANUEL DELGADO** prepared and submitted the site audit report for Company 2 in an expedited fashion, which resulted in the BOC notifying Company 2 via email the following morning of May 19, 2023, that it had met the CMS standards and that its accreditation had been

approved.

14. In or around May 2024, Individual 2 sold Company 2 as a Medicare-enrolled DME supplier.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1. The allegations in this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging criminal forfeiture to the United States of certain property in which the defendant, **MANUEL DELGADO,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to such violation.

3. The property subject to criminal forfeiture includes, but is not limited to, the following: a forfeiture money judgment for $288,700 (US) to be imposed as part of the defendant's sentence, which is a sum of money equal in value to the forfeitable property the defendant obtained as a result of the violation charged in this Information.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth

in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
AIMEE C. JIMENEZ
ASSISTANT U.S. ATTORNEY


GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
For JACQUELINE Z. DEROVANESIAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: __25-20006-CR-MOORE/D'ANGELO__

v.

MANUEL DELGADO,

CERTIFICATE OF TRIAL ATTORNEY

_____/
Defendant.

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☒ Miami    ☐ Key West    ☐ FTP
☐ FTL      ☐ WPB

I do hereby certify that:
1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)                  (Check only one)
   I    ☒ 0 to 5 days                ☐ Petty
   II   ☐ 6 to 10 days               ☐ Minor
   III  ☐ 11 to 20 days              ☐ Misdemeanor
   IV   ☐ 21 to 60 days              ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _/s/ Aimee C. Jimenez_
Aimee C. Jimenez
Assistant United States Attorney
Court ID No.    A55000795

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** MANUEL DELGADO

**Case No:** _____

Count #: 1

Conspiracy to Defraud the United States

Title 18, United States Code, Section 371

* **Max. Term of Imprisonment: 5** years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>MANUEL DELGADO,<br>_____<br>*Defendant* | )<br>)  Case No.<br>)<br>)  **25-20006-CR-MOORE/D'ANGELO**<br>)<br>) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: 11/25/24

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

WALTER REYNOSO
_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*